Catron, Ch. J.
To Hooper’s bill against Bryant, as administrator of Daniel Young, Bryant pleaded the statute of 1789, ch. 23, sec. 4, without averring that he had advertised as directed in the 5th section. This plea was overruled below, and Bryant relied on the same matter in his answer. 1 st. Is the plea good without an averment on the part of the administrator, that he had *8 advertised within two months after administration grant- ® ed? Owing to the conflicting opinions expressed by the Judges upon the statute, it will be examined aside from authority, and then the decisions on it, if any. The 4th section provides, that resident creditors shall demand and bring suit for their debts within two years, or they shall he forever barred in courts of law and equity. Three years are allowed to non-resident, creditors. In the same section there is an exception in favor of infants, &c.; and 2d, an exception in favor of creditors, who delay at the request of the administrator.
The 5th section provides, that every executor or administrator shall, within two months after being qualified, advertise at the court house of the county where the deceased resided, and other public places in the county, and at the district court house at the next superior court, for all persons to bring forward their demands of every kind against the estate.
Does this section form an exception to the enacting clause in the 4th, the same as those in favor of infants, &c. contained in the 4th section, or is it merely directory to the administrator?
The statute of 1723, ch. 10, requiring an inventory to be returned, and sale to be made of the goods, Ne-is directory, as arc different statutes prescribing the duties of administrators; nor is there any thing in the 5th section of the act of 1789, indicating a different intention. The exceptions to prevent the formation of the bar declared by the 4th section, are plainly declared in that section; and why, if the legislature intended that the want of advertising should form an exception, did it not so provide plainly in that section?
How has the act been understood by the country? The practice under it is the best evidence of its meaning. It is conclusive, where a statute so extensively acted upon as this is, has for a long time been construed by the great body of the people one way; the language being doubt *9 ful. For more than twenty years, district courts have not existed, and therefore to comply with the words of the act has been impossible. The statute has not been pursued for many years, in form; in neighborhoods where there have been newspapers printed, these have generally given notice. The appalling difficulty is, that after a lapse of ten or twelve years, no executor or heir could prove that notice had been given in the way prescribed by the act of 1789, section 5. It is supposed this court is bound by authority, to pronounce this plea bad, because the advertisement was not averred.— There is much in the shape of respectable opinion, but little of authority on the subject.
In 1814, the cause of Lewis v. Hickman (2 Tenn.R.317) involved the question, whether an heir or administrator could defend himself by the plea of seven years under the act of 1715, ch. 48 and sec. 9. To a billjto enforce a title bond, Edwin Hickman’s heirs and his administrator relied upon the act of 1715, c. 48 and sec. 9, as a bar. The court went into an examination whether the act of 1715 was in force, it being insisted that the act of 1789, ch. 23, had repealed it. The court decided that both the acts were in force, and barred the complainant. This was the only point made in the cause by the record, and which has been followed ever since. In the examination of the question, the court expresses an opinion, that an advertisement, as prescribed by the 5th section of the act of 1789, is a condition precedent, and necessary to form the bar declared by the 4th section. Respectable as this may be as an opinion, yet,’that it has the force of adbinding authority, cannot be assumed. The next case is that of Pea v. Waggoner, (5 Hay. R. 1) decided in 1818, at Charlotte. There, Pea, the administrator of Tate, filed a bill against the heirs of the deceased, to have refunded money he had paid to an amount more than the assets that came to his hands. The heirs of Tate pleaded the statute of 1715, ch. 27, of three years, *10 and that of 1715, ch. 48, sec. 9, of seven years, in bar of the administrator’s demand. The question again presented itself, whether the 9th section of the act of 1715, ch. 48, was in force. The court followed the decision, substantially, in Lewis v. Hickman; but in the reasoning, an opinion is expressed, that the advertisement required by the act of 1789 is not necessary to form the bar by virtue of that act. Judge Whyte thought differently. The opinions here expressed formed a rule of conduct for the country after the year 1818, because it was known that such was the opinion of a majority of the court. Nor do I believe any well-informed lawyer would have set out the fact of advertising in his plea, after the case of Pea vs. Waggoner was published.
Again, in 1818, at Nashville, the cause of Johnston vs. Dew (5 Hayw. Rep.224) was decided, which involved indirectly the question whether the advertisement was necessary as a condition precedent. Judges Haywood and Roane adhered to the opinions expressed m Pea vs. Waggoner, and Judge Whyte dissented from their reasoning in this respect, but agreed in the result on other grounds. This case did certainly not directly present the question: yet the country, the bar and the courts, from 1818 to this time, have acted upon the decision as the true construction of the act.
But at the special term holden at Nashville, in 1831, the cause of Graves vs. Graves, presented the question directly, whether the advertisement was necessary, and the fact must be averred and proved to make out the de-fence under the 4th section of the act of 1789. There were only two Judges on the bench. Judge Whyte drew up an opinion in accordance with those expressed by him in Pea vs. Waggoner, and Johnston vs. Dew.—Judge Peck concurred in affirming the judgment on other grounds, leaving the question open on this point.
This is believed to be a true history of the course of decision in Tennessee, on the construction of the act of *11 1789. The question before this court is not so much whetb-erweare bound by the authority, either way, as how the country at large has understood the matter and acted upon it. That this has been in accordance, generally, with the opinions of Judges Haywood and Roane, in Pea vs. "Waggoner and Johnston vs. Dew,is certain; nor is it less certain that great confusion would follow a different construction at this day.
The causes of Pea vs. Waggoner and Dew vs. Johnston, were decided in the spring of 1818. In that year they were published in the 5th volume of Haywood’s Reports. In 1834 this plea was filed. Judge Haywood died in the fall of 1826. The correctness of the construction given to the act of 1789,by Judges Haywood and Roane, was not seriously questioned whilst the former remained on the bench, and it is confidently believed the repose of the country requires it should not be questioned now. One thing is manifest: if it is, the present defendant will not have a decree against him because of any ignorance or mistake in his counsel or himself in making his defence, but because of a disregard by this court of its former opinions, when others were on the bench. From any tiling appearing on this record, the defendant could just as well have relied on the ordinary act of limitations of three years. Bryant was subject to be sued by Hooper the day the former administered.
It is insisted that this plea is not good, because Hooper and Bryant stood in the relation of trustee and cestui que trust. This is a mere demand for money, not for any specific chattel, the property of Hooper. Was Bryant’s possession of the money and property of the estate of Daniel Young, consistent with Hooper’s right? Could Hooper say to him, this is my money, and not to be applied in the administration of the assets? Surelyjiot.—Cocke and Jack vs. M’Ginnis, Martin and Yerger’s R. 361. 4 Mason’s R. 29.
The act of 1789 intended to bar all claims and d<?-> *12 mancls not sued for before the expiration of the two years, unless within the exceptions, and not due when administration was granted. The acts must be taken together. The administrator is to pay the just debts first, and at the expiration of the two years, he is to settle and complete his administration, if it be practicable, by distributing the surplus to the next’of kin. Here was an unsettled and very uncertain demand for money, set up by complainant against this administrator, a year and a half after the time of settlement and distribution had expired, and when the defendant had parted with the assets. The policy of the country, the interest of families and administrators require that at the expiration of two years, the distributees should know what was theirs of their father’s estate, and should receive it; and the administrator should be relieved from the burthen of his trust. Such is the object of the act of 1789, and it is our duty to enforce it.
Green, J.
The first question presented in this cause, is upon the construction of the act of 1789, ch. 23, sec, 4 and 5. In the case of Lewis’ executors vs. Hickman’s heirs and administrators, (2 Tenn. Rep. 317,) the court say the advertisement directed in the fifth section must be regarded as a condition precedent to the application of the bar provided in the fourth. In the case of Pea vs. Waggoner el. ah. (5 Haywood 1,) a contrary doctrine is held by the majority of the court; and in the case of Johnston’s executor vs. Dew’s administrator (5 Hay.224) the same opinion is expressed by the same majority. In the case of Graves vs. Graves’ administrator, decided at the last term of this court, two judges only on the bench, Judge Whyte re-asserted the doctrine held in Lewis vs. Hickman, while Judge Peck, although agreeing to an affirmance of the judgment on another ground, is understood to have dissented upon the question under consideration. This is a very important question to the com- *13 mumty, and while thé opinions of different ludges on it , ,. . , ’ , are thus conflicting, neither persons interested, nor even lawyers, can know what to rely on as the law; and this statute, made for the quiet and repose of society, becomes any thing else than a means of producing that repose. It is high time that it should receive a settled construction, which shall be decisive upon the courts and upon the country.
I will not enter into a discussion as to what ought to have been the construction of this fifth section. In the case of Pea vs. Waggoner, Judge Whyte, who dissented from the majority, enters fully into the subject, and maintains with great cogency of argument, that the advertisement must be a condition precedent. On the other hand, in the case of Johnston vs. Dew, Judge Haywood, with his accustomed ability, contends for the contrary doctrine. I think the act of doubtful meaning, and that the prevalence of either construction would be far better than a state of doubt and uncertainty on the subject. For this reason, I will not contribute to the continuance of this state of uncertainty, by departing from the construction given in the case of Pea vs. Waggoner.
The advertisement not being necessary, the question next to be considered is, whether it was necessary the plea should contain averments negativing the existence of any of the exceptions contained in the fourth section.
This was clearly not necessary. Those exceptions weré introduced for the benefit of the creditor. If his case had come within any one of them, so as to prevent the bar, he ought to have stated the facts constituting the exception, in his bill. By the general terms of the enacting clause, all persons may be barred after the lapse of two years, if residing within the State, and three if residing elsewhere. But the provisoes come in, and make certain exceptions. He who comes after the two or three years, must come, showing by the statement of *14 the case, that he comes withm one of those exceptions, or he will be barred.
The next and last question is, whether the defendant stands in such relation to the complainant, as that he cannot plead the statute of limitations. I do not think he does. The defendant’s intestate was guardian of the complainant, and stood in such a trust relation to him, as that he could not have relied on the act of limitations. If specific articles of property had come into the hands of the defendant, which his intestate had held as guardian of complainant, as to such property, he would have stood in the same trust relation his intestate had occupied. But that is not this case. This is a mere money demand, and the complainant stands in the situation of all other creditors. The plea therefore is good.
Peck, J.
The principal question debated in this cause, is one that has been repeatedly before the courts. That it has never been settled, is admitted by the bar: perhaps it is not so material how the law in the case shall be pronounced, as it is material to have it permanent.— With a view to that it has received more than usual consideration. The plea of limitations is not to be discountenanced; on the contrary, being made for repose, it ought to have such construction as to allow the benefits contemplated by the framers of the law. The provisions of this act are for the benefit of those who do not stand for their own rights, but acting as they do in a representative character, they should not for slight matters be cut off from the benefit of a provision, which all agree is both just and wise. One acting in a fiduciary character cast on him by operation of law, should as soon as possible be eased from his burdens.
And this certainly was the view the framers of the act of 1789, ch. 23, had before them, when it became a law. Sec, 4, of that act, in my opinion, contains in itself a, *15 complete provision; it declares the time within which creditors shall exhibit and make demands, and then de-dares, “that if any creditor shall fail to make demand, and bring suit for the recovery of his or their debt, within the time specified, he, she or they, shall be forever barred at law or in equity.”
The fifth section has no connection with the fourth; it is directory to the executor; he shall advertise at the court house, and other public places in the county where the deceased had resided; but there is nothing in this section which cuts oil' the executor from the benefits intended for him in the fourth section; and I am borne out in this construction by the proviso in the fourth section in favor of infants and those non compos, or feme coverts. It is a rule in construction, that the expression of one thing is to be taken as the exclusion of another. The acts show who shall be excused from suing within the time limited, and there is no provision according to my construction, either express or implied, that tolerates the doctrine, that a mere oversight as to the most inconsiderable part of an executor’s duty, shall by implication of law, introduce all classes of creditors into the proviso with infants, feme coverts, and persons insane.
The law did not more intend to provide for the creditor than it did for the executor; and thosé who argue that creditors will slumber upon their rights until notified by advertisements, argue against common experience. The creditor is vigilant; he is always looldng to his rights; nay, sometimes men mistake, and assume to be creditors when they are not: so that I take the opposite of therproposition to be trae, that there will be suits enough, when men die leaving estates.
But there is another reason with me strong to show that the fifth section ought not to be construed a condition precedent; he who goes to a court house to enquire of the death and administration, has better evidence than an advertisement. There are the records of the *16 court; these show who is the representative of a deceased debtor. We are told that it is a legal presumption, that all persons know what is transacting in our courts; under this presumption, the creditor knows who he has to ask for his debt. I ask what service it will do the creditor beyond the'State, to set up an advertisement? It may he answered, that some friend will forward information; so he will if he knows the fact of the death, and the appointment of an administrator publicly made in open court; the fact in contemplation of law, is certainly as well known one way as the other.
In point of form I am satisfied the plea is good. It avers notice; this is complying with the spirit of the fifth section. The language is, “and that all creditors may be duly apprised” of the death, &c. Why is it material in what manner persons shall he apprised? We have held, if a party brings home notice in a newspaper to all persons, that this shall suffice. This is travelling out of the act, at the time that it keeps within its spirit. The great latitude given to amendments ift pleading, the spirit of our laws being against refined technicalities, and a disposition to reach the merits, are all so many authorities in favor of letting in the defence in the form Insisted on. But the argument might he carried much further, if we consider that the averment is indispensable; the administrator must ke<?,p his advertisement always by him, and have a witness to prove that it was set up, and then if the averment must he proved, the very form of the advertisement must he questioned, as well as the manner of proving it.
And this is obviated by a plain rule, as old as the law itself, that is, to suppose that everyone acting officially, has done what the law requires he should do; and if any person has sustained an injury by the not doing the act, it is a neglect for which he may be sued, and damages commensurate to the injury recovered. But you cannot take advantage of this neglect of duty, this mere *17 non-compliance, by declaring that a benefit expressly given, shall be taken away as a punishment for his neglect. This would be in effect inserting a proviso, and making an exception, not in the act. It is intimated that at the last term I assented to the opinion in the case of Graves vs. Graves’ administrator. In that case the question did not necessarily arise in the pleadings; there was no plea of the statute filed; there was a mere memorandum on the docket, "Stat. Lim.” abbreviated; these memoranda the court has so often said would not be noticed, that I gave my judgment not regarding it, as I always shall do, where probable justice can be obtained by treating such memorandums as a nullity. In doing so, I believed, as the case was presented, that justice was attained; and surely I had much stronger reason for so disregarding that plea without form or substance, than I can this, which has both form and substance. Believing that the plea should have been allowed, I am for reversing this decree.